OPINION
{¶ 1} Forrester Steele ("Steele") appeals from a judgment of the Greene County Court of Common Pleas, Domestic Relations Division, which found her in contempt of court for interfering with the visitation of her ex-husband, Bruce Forrester ("Forrester"), and ordered her to pay $1,500 in attorney fees.
 {¶ 2} The parties were divorced in 2000 and, pursuant to the divorce decree, Steele became the residential parent of their two minor children, Kathryn and Bruce. Forrester was granted supervised visitation on the condition that he "enroll in counseling with a licensed psychologist to address and deal with the issues that [had] been identified by Dr. Layh," a clinical psychologist who had conducted a court-ordered psychological examination of Forrester. The initial visitation arrangement provided for visits at the Greene County supervised visitation center, with the possibility of supervised visits outside the center and unsupervised visits in the future.
 {¶ 3} Steele failed to bring the children to numerous visits at the center due to conflicts in their schedules and illnesses. Visits were also cancelled due to the children's alleged unwillingness to attend the visits. On July 31, 2003, Forrester moved for an order requiring Steele to show cause why she should not be held in contempt of court for her failure to provide visitation as ordered by the court. He also sought $1,500 in attorney fees and $195 in court costs.
 {¶ 4} The trial court conducted a hearing on January 20, January 21, and March 15, 2004 at which extensive evidence was presented. Kathryn and her mother were each represented by attorneys at this hearing, as was Forrester. Following the hearing, the trial court found Steele in contempt and ordered her to pay Forrester's legal fees and costs.
 {¶ 5} Steele raises four issues for review on appeal, which we will treat as assignments of error. Kathryn's attorney filed a brief but did not file a notice of appeal, and therefore is not a proper party to this appeal. We note, however, that Kathryn's assignments of error are the same as her mother's.
 {¶ 6} I. "THE TRIAL COURT ERRED WHEN IT RULED THAT APPELLANT WAS FOUND IN CONTEMPT FOR FAILURE TO FACILITATE THE APPELLEE'S COURT-ORDERED PARENTING TIME, AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} Steele claims that she cancelled visitations for "valid" reasons and that many of the visits that she cancelled "were attempted to be rescheduled." She claims that the written reports offered into evidence against her — the reports of people working at the supervised visitation center — were "vague" and did not take into account her tone of voice. She also claims that she was never heard dissuading the children from visiting with Forrester. She asserts that there was no evidence that she had willfully or intentionally violated the court's visitation order.
 {¶ 8} A trial court's decision in a contempt proceeding will not be reversed absent an abuse of discretion because the primary interest involved in a contempt proceeding is the authority and proper functioning of the court. State ex rel. Celebrezze v. Gibbs, (1991), 60 Ohio St.3d 69,75, 573 N.E.2d 62; Denovchek v. Trumbull Cty. Commrs. (1988),36 Ohio St.3d 14, 16, 520 N.E.2d 1362. Likewise, a decision regarding parental visitation rights will not be reversed absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 9} Forrester presented extensive testimony from Barbara Stamper, the coordinator of the supervised visitation center, about Steele's attitude and behavior toward the children's visits with him. Stamper stated that Steele had not encouraged the children to visit with Forrester when they expressed reluctance to do so and had cancelled numerous visits based on the children's schedules or family activities, several of which Steele had scheduled herself. Numerous visits were also cancelled due to illnesses which were never documented, although Stamper admitted that parents were not required by the center to provide such documentation. (At the hearing, Steele did claim to have letters from doctors pertaining to many of the cancelled visits. She offered to produce them but did not do so.) Stamper also noted that, if one of the children had a scheduling conflict, was sick, or refused to participate in visitation, Steele did not bring or encourage the other child to attend. Although Steele expressed a willingness to reschedule cancelled visits, she did not take any initiative to do so. As a result of these cancellations and conflicts, there were some significant stretches of time during which Forrester did not see the children, including over the holidays at the end of 2003, and there were many occasions on which he came to the center for a visit only to have it cancelled. Stamper testified that the center strongly discouraged cancellations because the center's busy schedule made it difficult to accommodate rescheduling.
 {¶ 10} Stamper also testified that the Forrester children appeared coached in negative behaviors. She recounted that Bruce sometimes had a sheepish smile on his face when reporting that he did not want to visit with his father. Stamper also recounted an occasion during which Steele and Forrester had disagreed about whether a particular visit was to be supervised or unsupervised. When the center's staff determined that the court would have to resolve the dispute, Steele was observed jumping into the air and saying "I won" in the presence of her children. Stamper felt that the children appeared coached when they expressed fears about visiting with their father and that Steele's non-verbal cues to the children did not encourage visitation. In one three-month period, Steele had six documented violations of staff policies, while Forrester had none.
 {¶ 11} Finally, Stamper testified that, for the most part, the children seemed to enjoy their time with Forrester, although their level of engagement varied somewhat from visit to visit. The children were generally relaxed and playful during the visits at the center. Stamper acknowledged that the children seemed more apprehensive about the prospect of visiting with their father away from the center.
 {¶ 12} Antonio Perez, who supervised approximately twelve six-hour visits between Forrester and the children away from the supervised visitation center, testified that the children had fun with Forrester and did not express fear when they were with him. He also testified that Forrester's behavior toward the children was "totally" appropriate. During their time together, they engaged in activities such as horseback riding, visiting Young's Dairy, and going to parks and a museum, which Perez described as "pure unadulterated fun."
 {¶ 13} Steele offered her own testimony and that of her husband that she had encouraged the children to visit their father and, on occasion, had even pleaded with them to go. She claimed to have used her best efforts to get the children to go and denied discouraging them in any way. She asserted that the children's anxiety had increased when Forrester had been allowed to take them away from the visitation center and that it had been harder to get Kathryn to go for visits since Kathryn found out that there would eventually be overnight visits. According to Steele, Kathryn was still traumatized by fear related to observing her father's arrest on a domestic violence charge in 1998 and her alleged conversation with a police officer that night in which the officer revealed that her father had threatened to kill her mother. Steele admitted to being "deathly afraid" of Forrester herself, based in part on his threat to kill her in 1998, but she claimed that she had only talked with the children about this incident to the extent that they had asked questions and had been mature enough to understand it. Steele also offered the testimony of John Baren, a social worker who counseled Kathryn, that Kathryn suffered stress related to the visits with her father.
 {¶ 14} Following the hearing, the trial court found that Steele had disobeyed the court's visitation order and had hindered Forrester's interaction with the children. The court further found that regular visitation fostered positive interaction with Forrester, and it reiterated its earlier finding that it was in the children's best interest to know and interact with both parents. Thus, the court held Steele in contempt and sentenced her to 30 days in jail, which were suspended on the condition that she encourage parenting time with Forrester and comply with the court's orders in the future.
 {¶ 15} Based on the evidence presented, we cannot conclude that the trial court abused its discretion in finding Steele in contempt of its visitation order. It was undisputed that many visits were missed, and there was ample evidence which, if believed, supported the conclusion that Steele had not been cooperative with the visitation. The observations of the staff at the supervised visitation center were inconsistent with Steele's claims that she unequivocally encouraged the children to visit their father. Moreover, the children's alleged reactions to modifications in the visitation arrangements clearly paralleled Steele's substantial apprehension about moving toward supervised visitation away from the center and, ultimately, unsupervised visitation, in accordance with the court's orders.
 {¶ 16} The court's questions evinced concern about the extent to which the 1998 instance of domestic violence continued to be discussed with the children. In our view, the court could have reasonably viewed with some skepticism Steele's and the counselor's claims that the children continued to be traumatized by their observation of Forrester's arrest more than five years earlier — when they were 5 and 3 years old. Moreover, the trial court expressly discounted the counselor's testimony because his opinions were based on information provided only by Steele and Kathryn, because he had been unaware of the concerns of the supervised visitation center's staff about Steele's influence on the children's behavior at visitation, and because he had not obtained any information from Forrester.
 {¶ 17} We are well aware, as was the trial court, of Forrester's "unique personality." Steele presented or attempted to present evidence in the divorce proceedings (and attempted to do so again during these proceedings) that Forrester has neo-Nazi sympathies, makes his living by selling questionable sexual and healing devices over the internet, studies unidentified flying objects, and the like, and threatened to kill her during their divorce proceedings. However, evidence about these concerns was before the court prior to the issuance of the current visitation order. The trial court's visitation order seems to have taken these concerns into account by ordering substantially less visitation than would be provided by a standard order and by requiring a very significant period of supervised visitation. Steele did not appeal from the trial court's judgment concerning visitation. Further, we agree with the trial court's observations at the hearing that the visitation order cannot be tailored to Steele's fears that Forrester might do something harmful to the children in the future when those fears are not supported by any factual basis. If, at some point, Steele has credible new evidence that visitation with Forrester is not in the children's best interest, she should pursue her concerns through a motion to modify visitation, rather than by undermining — and being held in contempt of — the current order.
 {¶ 18} The first assignment of error is overruled.
 {¶ 19} II. "THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S REQUEST TO HEAR KATHRYN FORRESTER THROUGH TESTIMONY OR THROUGH THE APPOINTMENT OF A GUARDIAN AD LITEM, NOT ALLOWING THE APPELLANT TO BRING THE COMPLETE CASE IN DEFENSE OF THE CONTEMPT COMPLAINT."
 {¶ 20} Steele asserts that her daughter Kathryn's testimony "could have cleared [Steele] from Contempt by showing [Kathryn's] true feelings towards [her father], and her fears regarding him." She claims that Kathryn was her "best witness" and that the trial court violated R.C. 3109.04(B)(1) by refusing to interview Kathryn in chambers. She also claims that a guardian ad litem should have been appointed on behalf of Kathryn.
 {¶ 21} R.C. 3109.04(B)(1) states:
 {¶ 22} "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation."
 {¶ 23} The language of the statute does not support Steele's claim that the trial court was required to interview Kathryn. This matter was before the court as a contempt proceeding. It was not "an original proceeding [for the allocation of parental rights and responsibilities] or * * * any proceeding for modification of a prior order of the court making allocation," as contemplated by R.C. 3109.04(B)(1). Steele has cited no authority for the proposition that a court is required to interview a child when one of her parents is charged with contempt related to a visitation order. Although Steele (and Kathryn) attempted to relitigate the visitation issue during these proceedings, we emphasize that a contempt proceeding is not a proper avenue for seeking modification of a visitation order. For this reason, R.C. 3109.04(B)(1) did not apply.
 {¶ 24} For similar reasons, the trial court did not err in failing to appoint a guardian ad litem. Kathryn's attorney filed a motion for the appointment of a guardian ad litem six months after the contempt proceedings were initiated and only a few days before the hearing was to begin. Moreover, the motion was styled as a motion "to suspend visitation and for appointment of Guardian." As discussed supra, the contempt proceedings were not the appropriate means by which to request a change in the visitation order. Therefore, the denial of the appointment of a guardian for this purpose was entirely appropriate.
 {¶ 25} The second assignment of error is overruled.
 {¶ 26} The third and fourth assignments of error will be addressed together.
 {¶ 27} III. "THE TRIAL COURT ERRED WHEN IT DID NOT CONDUCT A PROPER HEARING REGARDING THE EXTENSION OF A PROTECTION ORDER, PURSUANT TO OHIO REVISED CODE § 3113.31."
 {¶ 28} IV. "THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO EXTEND THE EXPIRED CIVIL PROTECTION ORDER AGAINST THE APPELLEE BECAUSE THERE WAS EVIDENCE PRESENTED TO PROVE THAT THE PLAINTIFF IS UNDER THE THREAT OF IMMINENT PHYSICAL DANGER."
 {¶ 29} Steele contends that she was not afforded an opportunity to present evidence in support of her request for an extension of the civil protection order that had been in effect against Forrester since 1998. The protection order was due to expire pursuant to the five year limitation set forth at R.C. 3113.31(E)(3)(a). Steele was on notice that the trial court intended to address the requested extension of the civil protection order, in conjunction with the contempt hearing, on March 15, 2004. See Hearing Notice, filed January 29, 2004. Steele apparently intended to rely on her own testimony and that of her daughter in support of the extension. As discussed supra, the trial court refused to interview Kathryn. We will discuss Kathryn's proffered testimony infra. We note, however, that it was Kathryn's attorney who attempted to call Kathryn as a witness, not Steele.
 {¶ 30} Steele contends that she "was not allowed to present any further evidence," but it is unclear what additional evidence she had hoped to present. She was not precluded from calling any witnesses. The trial court acted reasonably in refusing to hear testimony from Steele about events and observations that predated the prior protection order. Moreover, Steele sought to present character evidence to show that Forrester would act violently in the future. Insofar as Evid. R. 404 precludes the use of character evidence to prove that someone committed a crime that has already occurred, the trial court reasonably precluded the use of such evidence to prove that a crime was likely to occur in the future, especially in light of the fact that there was no evidence that Forrester had been physically violent with Steele in the past. Moreover, Steele admitted that Forrester had not harmed the children emotionally or physically during their visits.
 {¶ 31} Steele also sought to rely on incidents allegedly related to her by the children, e.g., a putrid smell in Forrester's apartment, the presence of naked statues and pictures, and his failure to do what they wanted. Kathryn's purported testimony would have supported some of these claims. According to the proffer, Kathryn would have stated that: she was afraid of her father and felt that he was "different from other fathers and other men;" she did not like his apartment or its smell; there were naked statues and pictures in the apartment, as well as pictures of Hitler and concentration camps; and her father had left her and her brother alone in the car with someone that they did not know while he "went off into the forest allegedly in search of UFOs or some other such matter."
 {¶ 32} A trial court acts within its discretion in giving little weight to statements attributed to a child where there is evidence that the child has been coached by one parent regarding her feelings for the other parent. See In re L.S., 152 Ohio App.3d 500, 508, 2003-Ohio-2045,788 N.E.2d 696, ¶ 33. In our view, the trial court could have reasonably questioned the value of Kathryn's testimony in light of Steele's own admission that Forrester had not caused the children any harm and the credible allegations that Steele had fostered the children's fear of their father.
 {¶ 33} Moreover, there were substantial discrepancies between the accounts of Perez, the supervisor of the visitations away from the supervised visitation center, and the testimony proffered by Kathryn's attorney. For example, Kathryn's attorney claimed that she had complained of a putrid smell in Forrester's apartment, whereas Perez — who had been present on the one occasion when Kathryn was at the apartment — testified that he had not smelled anything unpleasant at the apartment and that the children had appeared happy there. Similarly, Perez denied that he had been left alone with the children in the car at night in the woods, although he stated that he might have waited in the car with them once while Forrester ran into a Kroger. This account stands in stark contrast to Kathryn's attorney's proffer that Forrester had left the children alone in the car with someone that they did not know while he "went off into the forest allegedly in search of UFOs or some other such matter." Perez also contradicted Steele's testimony and Kathryn's proffered testimony when he stated that the children had not exhibited fear of their father and that he had never observed anything unusual or "out of the ordinary" that he felt obliged to report to the visitation center.
 {¶ 34} In sum, the trial court reasonably concluded that the evidence did not support the extension of the protection order, and it acted within its discretion in refusing to hear Kathryn's testimony on this issue.
 {¶ 35} The third and fourth assignments of error are overruled.
 {¶ 36} The judgment of the trial court will be affirmed.
Brogan, P.J. and Fain, J., concur.
(Hon. Frederick N. Young retired from the Second District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).