OPINION
{¶ 1} Gregory Stine appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which denied his motion for contempt. The contempt motion stems from his former wife's failure to refinance or to sell a 2003 Pontiac Vibe in accordance with the parties' divorce decree. Penny Chandler, Stine's former wife, has not filed a brief in this matter.
 {¶ 2} The record reveals the following facts.
 {¶ 3} Gregory Stine and Penny Chandler were married on July 1, 2000. No children were born of the marriage. On May 13, 2003, the trial court issued a final judgment and decree of divorce. The decree contained a property settlement that had been agreed upon by the parties. Of relevance, paragraph 6 of the divorce decree provided that Chandler was to retain the 2003 Pontiac Vibe and to assume the debt on the vehicle, which was approximately $17,000. The paragraph also provided:
 {¶ 4} "Further, the Plaintiff [Chandler] shall cause said indebtedness to be refinanced out of the Defendant's name and into her name alone on or before the date 90 days from the filing of this Final Judgment and Decree of Divorce. Should the Plaintiff fail to cause the refinancing of the indebtedness within said 90 days, then said vehicle will be immediately listed for sale and sold by the Plaintiff, and the Plaintiff will either keep and retain any sale proceeds therefrom over and above the then existing loan balance, and/or the Plaintiff shall assume, pay and hold the Defendant harmless with respect to any loan balances remaining after such sale."
 {¶ 5} Chandler did not refinance the loan within ninety days of the filing of the divorce decree, and she has not sold the vehicle. Consequently, Stine has filed several motions for contempt. On September 30, 2003, Stine filed his first motion for contempt. A hearing was held on November 14, 2003. The magistrate overruled the motion, finding that Chandler had attempted unsuccessfully to refinance the loan with three institutions, and that she had listed the vehicle for sale in August 2003 for $15,000, the loan payoff amount. Although the magistrate denied the motion, he expressed concern that Chandler had not investigated the "blue book" value of the vehicle. He therefore ordered her to "make a thorough investigation to determine the fair market value of the automobile and to list the car at fair market value."
 {¶ 6} In May 2004, Stine again filed a motion for contempt, arguing that Chandler had continued to list the vehicle above fair market value and that he continued to be named as a responsible party for the debt. After a hearing in October 2004, the magistrate found Chandler to be in contempt. In his December 7, 2004, ruling, the magistrate found that Chandler had not tried to sell the Vibe for fair market value. The court fined Chandler $200, indicating that the fine may be purged upon listing the car at its blue book value or the Edmunds Tree Market Evaluation value. The magistrate further found Chandler in contempt for failing to make timely payments on the automobile. However, because Stine had not demonstrated that he had been damaged by this conduct, the court did not order a fine or jail time. The magistrate also set a follow-up hearing in February 2005 to review the matter. Chandler filed objections to the magistrate's ruling, which were overruled. On March 29, 2005, the magistrate held the review hearing. On May 3, 2005, the magistrate found that Chandler had listed the car for fair market value in accordance with his order.
 {¶ 7} On April 14, 2005, Stine filed another motion for contempt, again based on Chandler's failure to sell the Vibe. After a hearing, the magistrate found that Chandler "had the car listed for sale at all times and has listed the car at the fair market value." The magistrate further found that Stine had not demonstrated that the late payments by Chandler have had a negative impact on his credit rating. The magistrate thus denied Stine's motion for contempt.
 {¶ 8} Stine objected to the magistrate's ruling. On November 29, 2005, the trial court overruled the objections, stating:
 {¶ 9} "Plaintiff has listed the car in Auto Trader and has had it listed on a consistent basis. Plaintiff has been lowering the price to keep the price close to the estimated fair market value. The vehicle is currently listed at $9,900. During the time the car has been listed, plaintiff has had a few inquires but no offers. The court finds that it would be unjust to hold a party in contempt for something that is out of that party's control such as a buyer purchasing the automobile in this case."
 {¶ 10} The trial court further rejected Stine's contention that his credit score had been negatively affected due to Chandler's failure to pay the indebtedness in a timely manner on three occasions — in July and November of 2004 and January of 2005. The court reasoned that Stine's credit reports "contained other information that would adversely affect credit scores such as a high debt to income ratio. Defendant failed to prove that the late payments made by the plaintiff were the sole reason for the reduction in his credit scores."
 {¶ 11} Stine appeals from that ruling. In essence, he argues that the trial court erred in failing to enforce the terms of the divorce decree and to set a specific time frame for compliance with paragraph six. He further asserts that the trial court should have awarded compensation to him for harm done to his credit by Chandler's late payments.
 {¶ 12} "The purpose of civil contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." Windham Bank v.Tomaszczyk (1971), 27 Ohio St.2d 55, 58, 271 N.E.2d 815. The purpose of civil contempt is to coerce compliance with the court's lawful orders. Id. "[S]ince the purpose is remedial, it matters not with what intent the defendant did the prohibited act. * * * An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." Id., quoting McComb v. Jacksonville Paper Co. (1949),336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599. "Contempt can only occur where the contemnor has the power to perform the act listed in the court order but fails to do so." Schaefer v. Schaefer,
Greene App. No. 2004-CA-65, 2005-Ohio-3063, ¶ 13, citing Wilsonv. Columbia Cas. Co. (1928), 118 Ohio St. 319, 328-329,160 N.E. 906.
 {¶ 13} The determination of whether a party should be held in contempt is left to the sound discretion of the trial court.Forrester v. Forrester, Greene App. No. 2004-CA-81,2005-Ohio-5230, ¶ 8. Absent an abuse of discretion, an appellate court will not reverse the trial court's findings. Id. An abuse of discretion is shown if the trial court's attitude in rendering its decision was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. An appellate court will not weigh the evidence nor judge credibility of witnesses when reviewing factual findings of the trial court relating to its contempt determinations because both of these functions are solely within the province of the trial court. Pohl v. Pohl, Montgomery App. 20001, 2004-Ohio-3790. On its face, the trial court's determination appears to be reasonable — according to the evidence submitted at the hearing, Chandler has continuously listed the Vibe for sale at blue book value. Placed in the context of the procedural history of this case, however, the unreasonableness of the court's failure to find Chandler in contempt becomes apparent.
 {¶ 14} At the time of the trial court's ruling, two and one-half years had elapsed since the entry of divorce decree. The decree clearly provided that Chandler was to refinance the vehicle within 90 days of that date, thus removing Stine from the loan obligation on the automobile. If refinancing did not occur within that time period, the car was to be immediately listed for sale and sold by Chandler.
 {¶ 15} At the outset, we disagree with the trial court's conclusion that Chandler lacks control over the sale of the vehicle. While Chandler cannot control whether a willing buyer will answer her advertisement, there are other avenues by which she could sell the vehicle, such as a used car dealership or an auction. Moreover, if Chandler were so inclined, she could likely sell the vehicle in a very short time at a reduced price. In sum, the sale of the Vibe is not something outside of Chandler's control.
 {¶ 16} In addition, we believe that the trial court has placed too much stock in the fact that Chandler has — at least in 2005 — priced the car based on its "blue book" value. The divorce decree did not order Chandler to list the vehicle at its blue book value and to sell the vehicle for that amount. Rather, if refinancing was not available, the divorce decree required Chandler to immediately list the vehicle for sale and sell it. Although listing the vehicle at blue book value may satisfy this requirement in the short term, this action becomes increasingly insufficient the longer that the vehicle remains unsold. Considering that more than two years had passed since the issuance of the divorce decree, Chandler's listing of the automobile in Auto Traders at blue book value was inadequate. The mere fact that the vehicle has remained on the market for such a lengthy span of time indicates that the blue book value is not the fair market value for her vehicle in this market. Compliance with the terms of the divorce decree apparently will require Chandler to sell the vehicle for less than she believes that it is worth. It is clear, however, from the agreed upon property settlement quoted above that the parties contemplated that Chandler might sustain a loss on the sale.
 {¶ 17} Chandler obviously would like to sell the vehicle at a price consistent with its blue book value and close to her payoff amount, if not more. However, in light of the terms of the divorce decree, Chandler did not have — and the trial court should not have given her — unlimited time to sell the vehicle at blue book value. Moreover, in light of the fact that two and a half years had elapsed since the filing of the divorce decree, we agree with Stine that the trial court erred when it failed to find Chandler in contempt for failing to comply with its terms. It is patently unreasonable for Chandler to have retained possession of the automobile (in the absence of refinancing) and for Stine to remain named on the indebtedness for the vehicle for this length of time.
 {¶ 18} Stine also asserts that he should have been compensated "for the harm done to his credit by [Chandler] blatantly making untimely payments on the automobile and his time and expenses * * * incurred in bringing these actions before this Court and to repair his damaged credit."
 {¶ 19} It is well-established that "judicial sanctions in civil contempt proceedings may[,] in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." City of Cincinnati v.Cincinnati Dist. Council 51, Am. Federation of State, County andMunicipal Emp., AFL-CIO (1973), 35 Ohio St.2d 197, 206,299 N.E.2d 686, quoting United States v. United Mine Workers ofAmerica (1947), 330 U.S. 258, 303, 67 S. Ct. 377, 91 L.Ed. 884.
 {¶ 20} With regard to his expenses for bringing the motions for sanctions in the trial court, we note that the trial court required Chandler to pay the administrative costs for the motion at issue. Stine cannot seek reimbursement for his expenses concerning prior decisions of the trial court.
 {¶ 21} As for the harm to his credit, Stine presented evidence that his credit score had dropped from 729 in March 2004 to 666 in March 2005. He attributed this drop to Chandler's late automobile payments. Stine testified that, when he purchased a vehicle in December 2004, he would have had to pay a higher interest rate with his credit score than if he had obtained a loan jointly with his father. He provided a letter from State Farm Bank, dated March 31, 2005, in which the bank informed him that it would not approve his loan application due to "delinquent credit obligations." Stine testified that the only delinquent obligation was the Vibe loan.
 {¶ 22} As highlighted during cross-examination, Stine's credit report indicates his score was affected by certain factors, including that the proportion of revolving balances to revolving credit limits was too high and that the proportion of loan balances to loan amounts is too high. These factors were present in both 2004 and 2005. The March 2005 report also identified as factors that the "time since delinquency is too recent or unknown" and "time since most recent account opening is too short." Stine acknowledged that he had made more purchases and had increased his debt to asset ratio between March 2004 and March 2005.
 {¶ 23} Upon review of this evidence, the trial court concluded that Stine had failed to prove that the late payments by Chandler were the sole reason for the reduction in his credit scores. We agree with the trial court that there was other information that might have decreased his credit score, such as his additional purchases and the resultant increase in his debt to asset ratio. However, we disagree that Stine had to establish that Chandler's actions alone caused the decrease in order to be compensated. The letter from State Farm Bank indicated that its sole reason for denying his loan application was the delinquent credit obligation. Stine's undisputed testimony was that the Vibe loan was the only credit obligation that had become delinquent. Although there may have been other factors that reduced Stine's credit score, the evidence indicates that the delinquent payments were significant enough by themselves to warrant a denial of credit. Because Stine has remained on the Vibe loan due to Chandler's failure to refinance the vehicle or to sell it, as required by the divorce decree, the trial court should have awarded compensation to Stine for damage to his credit, to the extent that the amount of the injury caused by Chandler had been established.
 {¶ 24} The assignments of error are sustained.
 {¶ 25} The judgment of the trial court will be reversed and the cause remanded. Upon remand, the trial court shall enter a finding of contempt against Chandler and shall impose a reasonable penalty, purgable upon the sale or refinancing of the Vibe within forty-five days. The trial court shall further determine, based on the evidence already presented, whether Stine has established any actual financial detriment due to the delinquent payments and order reasonable compensation, if any.
Fain, J., concurs.