OPINION
{¶ 1} Plaintiff-appellant, Lucy Wolfe (now known as Lucy Wolfe-Collier), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, finding her and defendant-appellee, Ralf Schmitz, in contempt of court. For the following reasons, we affirm in part and reverse in part.
 {¶ 2} Wolfe and Schmitz married in August 1992. During the course of their marriage, the parties had two children — a son, born February 8, 1996, and a daughter, born January 26, 1998. On March 18, 2003, Wolfe filed a complaint for divorce against *Page 2 
Schmitz. The trial court issued a decree of divorce on April 21, 2003. That same day, the trial court also issued a final shared parenting decree. That decree set forth a schedule for parenting time and specified that Schmitz would pay Wolfe $550.77 in child support every month. Additionally, the decree stated:
 6. MEDICAL INSURANCE. Father shall continue to maintain the children on his German medical insurance plan. The Mother shall submit to the Father copies of any and all charges incurred by her for the children's health care and Father shall be obligated to pay one-half of said charges so incurred within three (3) days following receipt of the copies.
 {¶ 3} On February 27, 2004, Wolfe filed a motion seeking reimbursement from Schmitz for his portion of the children's medical expenses. On that same day, Wolfe also filed a motion to modify or terminate the shared parenting plan. The magistrate assigned to the parties' case held a hearing on Wolfe's motions. On September 20, 2005, the magistrate issued a decision that partially modified the shared parenting plan. In relevant part, the magistrate replaced Paragraph 6 with the following:
 P. Effective 9/1/05, Mother shall maintain the primary medical insurance coverage for the minor children. Father may continue to voluntarily carry his German medical insurance for the children if he so chooses, but he shall have no legal obligation to do so, and his cost for such insurance shall not be factored into the child support guideline calculation.
 Q. Effective 9/1/05, mother shall pay for the children's ordinary medical expenses, which are defined as the first $100 per child per calendar year of any medical, dental, orthodontic, optical, prescription drug and psychological expenses that are not covered by insurance. The parties shall pay the children's extraordinary medical, dental, orthodontic, optical, prescription and psychological expenses, which are those that exceed $100 per child per calendar year, in the following proportions: Mother = 50% and Father = 50%. *Page 3 
 {¶ 4} In addition to modifying the shared parenting plan, the magistrate granted Wolfe's motion for reimbursement. The magistrate ordered Schmitz to pay Wolfe $5,333.14, which was one-half of the amount Wolfe paid for the children's medical expenses from October 2003 through October 4, 2004. The trial court immediately reduced the magistrate's decision to judgment.
 {¶ 5} On February 3, 2006, the magistrate ordered that Schmitz was entitled to parenting time every Monday from 5:00 to 7:30 p.m. On April 18, 2006, the magistrate issued an order expanding Schmitz's parenting time to include every other weekend from 6:00 p.m. Saturday to 6:00 p.m. Sunday.
 {¶ 6} On May 22, 2006, the parties appeared before the magistrate and signed a memorandum of agreement which they requested that the trial court approve and adopt. As part of that agreement, the parties asked the trial court to nullify its September 20, 2005 order. The trial court complied with the parties' request, thus negating the modified shared parenting plan and the order that Schmitz reimburse Wolfe $5,333.14 for the children's medical expenses. The trial court also ordered, in accordance with the parties' request, that they maintain the parenting time schedule set forth in the February 3 and April 18, 2006 orders.
 {¶ 7} On August 30, 2006, Wolfe filed a motion for contempt due to Schmitz's failure to pay his portion of the children's medical expenses. In the attached affidavit, Wolfe stated that Schmitz had not paid his share of the children's medical expenses since October 2003. She claimed that "copies of all expenses dating from October 2003 through July 19, 2006 totaling $39,104.09" were submitted to Schmitz's attorney on August 15, 2006, but she had not received reimbursement. *Page 4 
 {¶ 8} On April 19, 2007, Schmitz filed a motion for contempt against Wolfe for her failure to make the children available for his parenting time on Monday, April 16. Schmitz filed additional motions for contempt when Wolfe and the children did not appear at the designated pick-up point on April 23, 28, and 30, as well as May 7, 12, 14, 21, 26, and 28.
 {¶ 9} Meanwhile, Wolfe filed her own flurry of motions. On May 18, 2007, Wolfe moved for: (1) modification or termination of the shared parenting plan, (2) the appointment of an attorney advocate for the children, (3) an in camera interview of the children, and (4) a psychology evaluation of Schmitz. On June 6, 2007, Schmitz also moved to modify the shared parenting plan.
 {¶ 10} On October 3 and 9, 2007, the trial court held a hearing on the pending motions for contempt. Both Wolfe and Schmitz testified at that hearing. With regard to Schmitz's loss of parenting time, Schmitz testified that, on Monday, April 16, 2007, Wolfe and the children failed to appear at the appointed time at the location designated for the exchange of the children. Schmitz waited for 20 minutes and then telephoned Wolfe. After not receiving an answer, Schmitz left a message and waited 10 more minutes before leaving. Events proceeded similarly on April 23, 28, and 30, and May 7, 12, 14, 21, 26, and 28.
 {¶ 11} Asked why she had terminated Schmitz's parenting time, Wolfe spoke of Schmitz allowing their son, who has Asperger Syndrome, to play computer games for hours. Wolfe also disapproved of Schmitz because he permitted their daughter to watch television during visits, he once failed to provide the children with warm clothes when he took them sledding, he kept a cat for a period in 2003 even though their son had allergies, and he did not properly care for their daughter when she broke her arm. In sum, Wolfe *Page 5 
testified that she denied Schmitz parenting time because she did not believe that he acted in the best interests of the children and she questioned his mental state to parent.
 {¶ 12} On the issue of the unpaid medical expenses, Wolfe testified that, despite her requests for reimbursement, Schmitz did not pay his share of the children's medical expenses from October 2003 through August 30, 2006 (the date on which Wolfe filed her motion for contempt). She also testified that she had obtained health insurance for the children in October 2003, and that she directed the children's medical providers to seek primary coverage from her insurer.
 {¶ 13} Schmitz testified that he carried health insurance for the children until April 2005. He claimed that he terminated the insurance plan because the magistrate indicated that she was going to delete his responsibility to maintain coverage from the shared parenting plan. According to Schmitz, he did not pay any medical expenses for the children because Wolfe sought payment for charges covered by the children's medical insurance. Schmitz could not determine from the invoices Wolfe generated what expenses Wolfe actually paid (i.e., copays or other amounts not covered by insurance), so he did not pay anything.
 {¶ 14} In August 2006, Wolfe provided Schmitz with receipts, bills, and statements from the children's medical providers. Using this documentation, Schmitz compiled a summary showing the amount each medical provider charged for its services and the amount Wolfe actually paid for the services. With regards to that summary, Schmitz testified as follows:
 Q. Now, did your — How much in toto was [Wolfe] asking you for?
 A. She was asking for $34,100.20. *Page 6 
 Q. And does your summary indicate how much of that $34,000 she had actually been reimbursed for?
 A. Yes, it sure does.
 Q. How much was that?
 A. $27,000.
 Q. What would be the remaining amount?
 A. $7,000.
 Q. And does your analysis indicate that you should be responsible for half of that $7,000?
 A. Yes.
Thus, Schmitz admitted that he owed Wolfe $3,500.
 {¶ 15} In its November 20, 2007 judgment, the trial court found both Wolfe and Schmitz in contempt of court. The trial court sentenced Wolfe to 30 days incarceration suspended on the condition that she purge the contempt by allowing Schmitz additional parenting time to compensate for the time lost. The trial court sentenced Schmitz to three days incarceration suspended on the condition that he purge the contempt by paying $3,500 at the rate of $200 per month.
 {¶ 16} Wolfe now appeals from the trial court's judgment and assigns the following errors:
 [1] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THE APPELLANT IN CONTEMPT.
 [2] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS FINDING THAT APPELLEE ONLY OWED $3,500.00 TO APPELLANT FOR UPAID HEALTH CARE CHARGES INCURRED FOR THE BENEFIT OF THE PARTIES' MINOR CHILDREN. *Page 7 
 {¶ 17} By her first assignment of error, Wolfe argues that the trial court abused its discretion in finding her in contempt of court. We disagree.
 {¶ 18} Generally, contempt is defined as disobedience of a court order. State ex rel. Corn v. Russo (2001), 90 Ohio St.3d 551, 554; R.C. 2705.02(A) (stating that "[disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer" constitutes contempt). In cases of civil contempt, unlike criminal contempt, the court imposes a sanction "`to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.'" Pugh v. Pugh (1984), 15 Ohio St.3d 136, 140, quoting McComb v. Jacksonville Paper Co. (1949), 336 U.S. 187, 191, 69 S.Ct. 497. Thus, the sanction is conditional, giving the contemnor "`the keys of his prison * * * since he will be freed if he agrees to do as ordered.'" Id., quoting Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253.
 {¶ 19} The trial court applies the clear and convincing evidence standard in a civil contempt proceeding. Brown, at 253. An appellate court will not reverse a finding of civil contempt absent an abuse of discretion on the part of the trial court. State ex rel. Celebreeze v.Gibbs (1991), 60 Ohio St.3d 69, 75. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 20} First, Wolfe argues that the trial court abused its discretion when it failed to consider the children's views regarding the shared parenting plan. Wolfe contends that if the children had indicated that they did not want to spend time with Schmitz, then she could have used the children's statements as an affirmative defense. *Page 8 
 {¶ 21} In support of her argument, Wolfe relies upon R.C. 3109.04(B)(1), which states:
 When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation.
By its clear terms, R.C. 3109.04(B)(1) only applies when the issue before the trial court is the proper allocation of parental rights and responsibilities. Thus, R.C. 3109.04(B)(1) does not require a trial court to interview the children before finding a parent in contempt.Forrester v. Forrester, Greene App. No. 2004 CA 81, 2005-Ohio-5230, at ¶ 23.
 {¶ 22} Wolfe also relies upon Schottenstein v. Schottenstein (Dec. 12, 2000), Franklin App. No. 00AP-285. In that case, a mother appealed a finding of contempt entered because she failed to return her children to their father pursuant to the court-ordered parenting schedule. During the contempt hearing, the mother sought to call the children as witnesses or, in the alternative, to have the judge interview the children in chambers. After the trial court found the children's testimony irrelevant and refused to admit it, the children's counsel proffered the anticipated testimony. In their testimony, the children would have stated that they flatly refused to return to their father's house despite their mother's pleas that they do so. *Page 9 
 {¶ 23} On appeal, this court addressed whether the trial court erred in prohibiting the mother from introducing the children's views, either through their testimony or an in-chambers interview. We focused on the situation surrounding the contempt proceedings — an ongoing, hotly contested divorce in which the children had earlier expressed a strong desire to live with their mother. Given those circumstances, we held that "the trial court should have met with the girls, both to hear their views and then to explain later why their views did or did not have an impact on his ruling." Id.
 {¶ 24} Unlike the mother in Schottenstein, Wolfe neither called her children as witnesses nor asked that the judge interview them in chambers. Thus, as Wolfe did not seek to introduce the children's views at the contempt proceeding, she cannot now complain that the trial court erred in not listening to those views. Although Wolfe argues that she moved the trial court for an in camera interview of the children, we find that that motion had no bearing upon the contempt proceedings. Wolfe filed that motion in conjunction with her May 18, 2007 motion for modification or termination of the shared parenting plan, and in it, she specifically requests the interview so that the trial court can consider the children's views with regard to the allocation of parental rights and responsibilities.
 {¶ 25} Additionally, unlike the mother in Schottenstein, Wolfe's defense to the motion for contempt did not hinge upon her children's refusal to visit with their father. Wolfe, instead, claimed that she did not follow the court's orders because Schmitz was a poor parent and visitation with him was not in the children's best interests. Wolfe cannot now offer a different defense on appeal to take advantage of the precedent set in Schottenstein. *Page 10 
 {¶ 26} Wolfe next argues that the trial court abused its discretion by prohibiting an attorney that Wolfe had hired for the children from participating in the contempt proceedings. However, Wolfe does not present a convincing argument as to why the participation of the children's attorney was necessary. She claims the children needed representation at the contempt hearing because "their desires were at least in some manner in conflict with the parenting time orders." (Br. at 10.) The record is devoid of any evidence supporting this contention. Additionally, Wolfe fails to explain how the attorney's nonparticipation prejudiced her. Wolfe had her own attorney to introduce evidence and make argument as to why she did not commit contempt of court.
 {¶ 27} Finally, Wolfe argues that the trial court abused its discretion in finding her in contempt for her failure to make the children available on Mondays when Schmitz had agreed to Friday parenting time. We find this argument unavailing. First, Schmitz had rescinded his agreement to switch to Friday over four months before Wolfe and the children failed to appear on Monday, April 16, 2007. Wolfe complied with Schmitz's insistence on Monday parenting time, making the children available on Mondays from November 20, 2006 through April 9, 2007. We conclude that the trial court did not err in finding that a defunct side agreement was not a defense to Wolfe's interference with Schmitz's parenting time. Second, at best, the switch to Fridays only explains why Wolfe and the children did not appear for Monday parenting time. The trial court also found Wolfe in contempt for failing to provide the children for weekend parenting time.
 {¶ 28} In sum, we conclude that the trial court did not abuse its discretion in finding Wolfe in contempt. Accordingly, we overrule her first assignment of error. *Page 11 
 {¶ 29} By Wolfe's second assignment of error, she argues that the trial court erred in finding that Schmitz only owed her $3,500 in unpaid medical expenses. We agree.
 {¶ 30} Both parties agree that Schmitz failed to comply with provision of the shared parenting decree that states:
 6. MEDICAL INSURANCE. Father shall continue to maintain the children on his German medical insurance plan. The Mother shall submit to the Father copies of any and all charges incurred by her for the children's health care and Father shall be obligated to pay one-half of said charges so incurred within three (3) days following receipt of the copies.
However, the parties interpret this provision differently. We concur with the trial court's determination that paragraph 6 requires Schmitz to pay one-half of any charges Wolfe actually pays for the children's health care. Thus, Schmitz does not owe Wolfe for any amounts a medical provider charges but insurance covers. Furthermore, we conclude this provision does not require Schmitz to pay premiums for health insurance for the children. The first sentence of paragraph 6 implicitly anticipates that Schmitz would pay any premiums to maintain the children on his German insurance plan. Thus, "charges incurred by [Wolfe] for the children's health care" does not include insurance premiums. The second sentence of paragraph 6 merely allocates the payment for health-related services provided to the children.
 {¶ 31} Although we agree with the trial court's interpretation of paragraph 6, we conclude that the trial court abused its discretion in its calculation of the amount Schmitz owed Wolfe pursuant to the terms of the decree. The trial court found that "[t]he parties agree that a minimum of $3,500.00 represents one-half of the medical expenses owed * * *." Based upon that alleged agreement, the trial court held that Schmitz could purge his contempt by paying Wolfe $3,500. *Page 12 
 {¶ 32} The parties, however, never agreed to the amount Schmitz owed for the children's medical expenses. In fact, in her closing argument, Wolfe claimed that Schmitz owed her $39,104.09 — the total amount of the children's medical expenses without any deduction for amounts insurance covered. At the very least, Wolfe only "agreed" that Schmitz owed her half of that amount, or $19,552.05.
 {¶ 33} Furthermore, even absent an agreement, the evidence does not demonstrate that Schmitz only owed $3,500. Key to determining the amount owed is the summary that Schmitz created from Wolfe's jumbled collection of receipts, bills, and statements from medical providers. That summary sets out the amount each medical provider billed and the amount Wolfe actually paid. Based upon that summary, Schmitz testified that Wolfe paid $7,000 for the medical expenses the children incurred from October 2003 through August 30, 2006. Schmitz then admitted that he owed Wolfe one-half of that amount, or $3,500.
 {¶ 34} However, the summary actually shows that: (1) in the relevant part of 2003 and all of 2004, Wolfe paid $9,409.54 for the children's medical expenses, and (2) in 2005 and the relevant part of 2006, Wolfe paid $5,873.62. Schmitz's summary also reflects that half of those amounts is $5,154.27 and $3,536.81, respectively. Thus, according to the summary, Schmitz owes Wolfe $8,691.08, not $3,500.
 {¶ 35} Our review of the summary reveals that it includes minor mathematical errors and fails to fully credit Wolfe for the amounts she paid to some health care providers, particularly Dr. Paul Linden. Despite these defects, the summary proves that Schmitz, by his own calculations, owes Wolfe much more than $3,500. Accordingly, we sustain Wolfe's second assignment of error. *Page 13 
 {¶ 36} For the foregoing reasons, we overrule Wolfe's first assignment of error and sustain her second assignment of error. We affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations. We remand this case to that court so that it may reevaluate the amount Schmitz must pay to purge his contempt.
Judgment affirmed in part and reversed in part; and causeremanded.
BROWN and KLINE, JJ., concur. *Page 1