[Cite as *Hrabovsky v. Axley*, 2014-Ohio-1168.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| MICHAEL HRABOVSKY | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2013CA00156 |
| | : | |
| KIMBERLY AXLEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of Common Pleas, Domestic Relations Division, Case No. 2006DR01211



JUDGMENT:           AFFIRMED



DATE OF JUDGMENT ENTRY:     March 17, 2014



APPEARANCES:

For Plaintiff-Appellee:

ADAM W. WILGUS
401 Tuscarawas St. W.
Suite 200
Canton, OH 44702

For Defendant-Appellant:

AARON KOVALCHIK
116 Cleveland Ave. NW
Suite 808
Canton, OH 44702

*Delaney, J.*

{¶1} Defendant-Appellant Kimberly Axley appeals the July 8, 2013 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division.

## FACTS AND PROCEDURAL HISTORY

{¶2} Plaintiff-Appellee Michael Hrabovsky and Defendant-Appellant Kimberly Axley were married in September of 1995. Two children were born as issue of the marriage: A.H., born December 24, 1996 and P.H., born August 8, 2000. Mother and Father obtained a divorce on January 31, 2007. In the divorce, Mother and Father agreed to a Shared Parenting Plan. Mother and Father divided parenting time somewhat equally and Father was named the residential parent for school purposes.

{¶3} Following the divorce, Father remained in the marital residence located in Lake Cable, Ohio. Mother resided in a leased home in North Canton, Ohio.

{¶4} On June 28, 2012, Father filed an ex parte motion to terminate visitation and a motion to terminate the Shared Parenting Plan. Father alleged two incidents as the basis for his motions. On May 31, 2011, A.H. was at Mother's home when A.H. discovered marijuana and a bong in the kitchen cabinet. A.H. called Father and told him what she found; then A.H. told her Mother. Mother denied the items were hers and removed them from her home. Mother returned the children to Father's home that evening. When the children were inside the home, Father went to Mother's car to confront Mother about the drugs in her home. Mother tried to enter Father's home to speak with the children. Father blocked the entrance and Mother punched him the in the face. Mother was charged with domestic violence and pleaded no contest to disorderly conduct in September 2011. A civil protection order was also issued.

{¶5} Mother was evicted from her home in North Canton. She leased a residence in Canton, Ohio. Mother leased the Canton residence with her paramour, Matthew Pullem. Pullem has a criminal record. In December 2011, Pullem was cited for driving under the influence. He was convicted of OVI and possession of drug paraphernalia for a marijuana pipe found in his possession when he was arrested. Pullem was placed in the court diversion Chance program, which he successfully completed.

{¶6} The magistrate granted the ex parte motion to terminate visitation on June 28, 2012.

{¶7} On July 17, 2012, the magistrate appointed a Guardian ad Litem for the minor children.

{¶8} Mother filed a motion for immediate review. On August 7, 2012, the magistrate vacated the order terminating visitation with Mother but ordered the minor children have no contact with Matthew Pullem. The magistrate's order noted the GAL had concerns of "parental alienation" and he requested a psychological evaluation to determine the same. The magistrate ordered the minor children to be evaluated through Northeast Ohio Behavioral Care or Dr. Patti Milsaps-Linger and follow all recommendations. The matter was set for a pretrial hearing on August 27, 2012.

{¶9} The GAL filed his report on August 21, 2012. He concluded, based on his interviews and observations, the children were highly alienated from Mother. He did not give a basis for the alleged alienation but rather deferred to the opinion of Dr. Milsaps-Linger.

{¶10} The GAL filed an updated report on December 13, 2012. Dr. Milsaps-Linger submitted her report to the GAL based on her interviews with the family and her review of the children's counseling records with Trillium Family Solutions. Dr. Milsaps-Linger concluded the children were alienated against Mother by Father. Dr. Milsaps-Linger recommended that parenting time should remain at the status quo and the family receive counseling to repair the familial relationships.

{¶11} On February 7, 2012, the magistrate modified the no contact order with Pullem to prohibit access to the minor children during overnight visits.

{¶12} The motion to terminate the Shared Parenting Plan came on for hearing on February 21, 2013 and April 19, 2013. At the hearing, Dr. Milsaps-Linger testified as to her report. The parties stipulated to Dr. Milsaps-Linger's professional qualifications but the magistrate did not designate Dr. Milsaps-Linger an expert. Dr. Milsaps-Linger stated the children exhibited signs of alienation of Mother, contributed to by Father. She based her diagnosis on different factors. First, when the children met with Dr. Milsaps-Linger, the children were clear as to their negative feelings about Mother. They gave almost identical information as to why they did not want to spend time with Mother. The children could not provide any positive information about Mother but were able to provide positive thoughts of Father. Second, Father entered the children into counseling immediately after the divorce but based on the records from Trillium Family Solutions, Mother was not included in the therapy. Dr. Milsaps-Linger did not contact Trillium Family Solutions directly and was not aware whether Mother was given the opportunity to be involved in the counseling. The children reported Mother knew about the counseling, Mother stated she did not know about the counseling, and Father indicated

he invited Mother to participate in the counseling. A third factor was certain behaviors by Father, such as driving the children by Mother's home in Canton. The children told Dr. Milsaps-Linger they determined Mother's home was in an unsafe neighborhood and dangerous. A fourth factor suggesting alienation was Father's use of the court system to address the issues with Mother rather than solving the problems with Mother directly.

{¶13} The magistrate conducted an in camera interview of the children on February 26, 2013.[1] As stated in the April 24, 2013 magistrate's decision, the children wanted limited contact with Mother.

{¶14} On April 24, 2013, the magistrate issued his decision denying Father's motion to terminate the Shared Parenting Plan. Father filed objections to the magistrate's decision. In his objections, he argued the record failed to support Dr. Milsaps-Linger's conclusion of parental alienation.

{¶15} On July 8, 2013, the trial court issued its judgment entry. The judgment entry stated it conducted an independent analysis of the law and facts, and based the trial court's review, it sustained Father's objections and terminated the Shared Parenting Plan. The trial court found the conclusions of Dr. Milsaps-Linger as to parental alienation by Father were not supported by the record. It determined that a change of circumstances occurred by virtue of the children's estrangement from Mother, Mother's cohabitation with Pullem, Mother's disorderly conduct conviction, the civil protection order, and Mother's possession of drugs and drug paraphernalia in her home. The trial court then found it was in the best interests of the children that Father be named the residential parent and legal custodian of the children.

{¶16} It is from this judgment Mother now appeals.

---

[1] A transcript of the in camera interview was not filed with the appeal.

**ASSIGNMENTS OF ERROR**

{¶17} Mother raises two Assignments of Error:

{¶18} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SUSTAINED THE OBJECTION TO THE MAGISTRATE'S DECISION AND TERMINATED THE SHARED PARENTING PLAN.

{¶19} "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DISCREDITED ITS OWN WITNESS."

**ANALYSIS**

**I. TERMINATION OF SHARED PARENTING PLAN**

{¶20} Mother argues in her first Assignment of Error that the trial court abused its discretion when it terminated the Shared Parenting Plan and made Father the residential parent and legal custodian of A.H. and P.H..

{¶21} A trial court enjoys broad discretion in custody proceedings. *Cossin v. Holley,* 5th Dist. Morrow No.2006 CA 0014, 2007–Ohio–5258, ¶ 28 citing *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraph one of the syllabus. A trial court's decision to terminate a shared parenting plan is reviewed under an abuse of discretion standard. *In re J.L.R.,* 4th Dist. Washington No. 08CA17, 2009–Ohio–5812. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must

not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610, 614 N.E.2d 742, 1993–Ohio–9.

{¶22} R.C. 3109.04 governs modification of parental rights and responsibilities in a shared-parenting decree. *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007–Ohio–5589, 876 N.E.2d 546, ¶ 11. Subsections (E)(2)(c) and (d) state:

> (c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. If modification of the terms of the plan for shared parenting approved by the court and incorporated by it into the final shared parenting decree is attempted under division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children.

> (d) Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for

the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.

{¶23} We held in *Wright v. Wright,* 5th Dist. Stark No.2011 CA00129, 2012–Ohio–1560, ¶ 25 that pursuant to *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007–Ohio–5589, 876 N.E.2d 546, if there is a change in designation of residential parent and legal custodian of a child, the trial court is required to make a determination that a change in circumstances has occurred, as well as finding that a modification is in the best interest of the child, pursuant to R.C. 3109.04(E)(1)(a).

<u>Change in Circumstances</u>

{¶24} Based on its independent review of the record, the trial court determined the evidence indicated five changes in circumstances since the original parenting order. First, A.H. discovered marijuana and drug paraphernalia in Mother's kitchen cabinet. Second, after Father confronted Mother with A.H.'s discovery of drugs in her home, Mother assaulted Father resulting in a disorderly conduct conviction and civil protection order. Third, Mother testified she was evicted from her North Canton home based on the financial aspects of the criminal proceedings. Fourth, the children did not have a good relationship with Mother's boyfriend, Matthew Pullem. Finally, the trial court noted the children's relationship with Mother severely deteriorated since the filing of the Shared Parenting Plan.

{¶25} The original parenting order was entered in 2007. Father's motion to terminate the Shared Parenting Plan was filed in June 2012. Mother argues the

incidents referred to by the trial court as changes in circumstances occurred in 2011. Mother contends if Father considered the events as changes in circumstances warranting the termination of the Shared Parenting Plan, Father should have filed his motion to terminate in 2011 when the incidents occurred. At the hearing, Father testified one of the reasons for filing the motion to terminate was on behalf of the children and their desire to limit their time with Mother. (T. 21).

{¶26} "Although R.C. 3109.04 does not provide a definition of the phrase 'change in circumstances,' Ohio courts have held that the phrase is intended to denote 'an event, occurrence, or situation which has a material and adverse effect upon a child.' ' *Wright v. Wright*, 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138, ¶ 22 quoting *Lewis v. Lewis,* 12th Dist. Butler No. CA2001–09–209, 2002 WL 517991 (April 8, 2002), citing *Rohrbaugh v. Rohrbaugh,* 136 Ohio App.3d 599, 604–05, 737 N.E.2d 551 (7th Dist.2000). In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one "of substance, not a slight or inconsequential change." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). "The purpose of requiring a finding of a change in circumstances is to prevent a constant re-litigation of issues that have already been determined by the trial court. * * * Therefore, the modification must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer,* 194 Ohio App.3d 240, 955 N.E.2d 453, 2011–Ohio–2610, ¶ 17 (3rd Dist.), citing R.C. 3109.04(E)(1)(a).

{¶27} A change of circumstances is an event or occurrence that has a material effect on a child. The change of circumstance standard does not include a time requirement for when the event or occurrence has taken place in relation to the filing of

the motion to terminate the Shared Parenting Plan. The modification must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order. In the present case, the prior order was issued in 2007. The events referred to as changes in circumstances took place in 2011, therefore arising after the prior order.

{¶28} The magistrate conducted an evidentiary hearing and denied Father's motion to terminate the Shared Parenting Plan. Upon Father's objections to the magistrate's decision, the trial court conducted an independent analysis of the facts and law based on the record and sustained Father's objections to the magistrate's decision. Mother argues the trial court's decision should not be given greater weight because the trial court did not have the opportunity to hear the witnesses or take additional evidence. We have generally recognized that a trial court enjoys broad discretion in determining whether to sustain or overrule an objection to a magistrate's decision. *Ford v. Ford*, 5th Dist. Tuscarawas No. 2012 AP 03 0025, 2012-Ohio-5454, ¶ 12 citing *Rader v. Rader,* 5th Dist. Licking No. 07 CA 5, 2007–Ohio–4288, ¶ 19, citing *Remner v. Peshek,* 7th Dist. Mahoning No. 97–CA–98, 1999 WL 803441 (Sept. 30, 1999). Moreover, magistrates are arms of their appointing courts, "which remain responsible to critically review and verify the work of the magistrates they appoint." *Quick v. Kwiatkowski*, 2nd Dist. Montgomery No. 18620, 2001 WL 871406 (Aug. 3, 2001), citing *Normandy Place Associates v. Beyer*, 2 Ohio St.3d 102, 443 N.E.2d 161 (1982). While the magistrate is the "initial fact finder and issue resolver," the trial court remains the "ultimate fact finder and issue resolver." *See Dayton v. Whiting*, 110 Ohio App.3d 115, 118, 673 N.E.2d 671 (2nd Dist.1996) (interpreting former Civ.R. 53 referee function). Thus, we find our

essential role in determining whether there is relevant, competent, and credible evidence upon which the fact finder could base his judgment *[see Tennant v. Martin– Auer,* 188 Ohio App.3d 768, 2010–Ohio–3489, 936 N.E.2d 1013, ¶ 16 (5th Dist.), citing *Cross Truck v. Jeffries*, 5th Dist. Stark. No. CA–5758, 1982 WL 2911 (Feb. 10, 1982)] is not herein altered simply because the trial court overruled the magistrate's custody decision.

{¶29} We determine the evidence in this case supports the trial court's conclusion there were changes in circumstances since the implementation of the original Shared Parenting Plan. These substantial events could have a material effect on the children. A.H., a teenager at the time of the evidentiary hearing, discovered illegal drugs at Mother's home. The children witnessed Mother assault Father. The children's relationship with Mother deteriorated since the original parenting order. We find no abuse of discretion for the trial court to determine there were changes in circumstances.

Best Interests of the Children

{¶30} Mother next argues the termination of the Shared Parenting Plan was not in the best interests of the children. R.C. 3109.04(F)(1) and (2) state the factors the trial court is to consider to determine whether a modification is in the best interests of the child:

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree

allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any

criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶31} The trial court considered the best interest factors in the findings of fact. The magistrate conducted an in camera interview with the children and the children expressed they wanted limited contact with Mother and no contact with Matthew Pullem. The GAL reported the children's interaction with Father was appropriate, their interaction with Mother was highly strained, and their interaction with each other was appropriate.

{¶32} The GAL and Dr. Milsaps-Linger recommended it was not in the best interests of the children to terminate the Shared Parenting Plan because the children were alienated from Mother, resulting from a pattern of conduct by Father. The majority of the testimony and evidence in the case centered on the cause of the dysfunctional relationship between the children and Mother. The GAL and Dr. Milsaps-Linger recommended that the family maintain the status quo and engage in counseling to repair the relationship. The trial court reviewed the evidence presented and rejected the finding that the children were alienated from Mother because of Father's conduct. The trial court saw no evidence presented to support the opinion that Father's conduct contributed to the children's difficult relationship with Mother, but rather the evidence supported the children's conclusion that Mother's conduct was the basis for their strained relationship.

{¶33} The trial court is the ultimate fact finder and issue resolver. It is well established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell*, 79 Ohio App.3d 667, 679, 607 N.E.2d 1096 (4th Dist. 1992). We have reviewed the record and find no abuse of discretion for the trial court to determine it was in the best interests of the children to terminate the Shared Parenting Plan. It was the opinion of the GAL and Dr. Milsaps-Linger that the children suffered from parental alienation from Mother. Dr. Milsaps-Linger testified that parental alienation could be caused by that parent's own conduct. (T. 9). In this case, the evidence presented demonstrated Mother's conduct could be a source of the children's strained relationship with Mother, as opposed to Father's conduct as the sole reason for the children to feel negatively about Mother.

{¶34} Based on our review, we find no abuse of discretion for the trial court to terminate the Shared Parenting Plan based on a change in circumstances and the best interests of the children.

{¶35} Mother's first Assignment of Error is overruled.

## II. WEIGHT OF WITNESS TESTIMONY

{¶36} Mother argues in her second Assignment of Error that it was an abuse of discretion for the trial court to reject the conclusion of Dr. Milsaps-Linger as to parental alienation for the children.

{¶37} Based on the GAL's concern of parental alienation of Mother, the magistrate ordered the children be evaluated through Northeast Ohio Behavioral Health or Dr. Milsaps-Linger. Dr. Milsaps-Linger evaluated the children. At the evidentiary hearing, Dr. Milsaps-Linger was called to testify as the court's witness. (T. 3). Dr. Milsaps-Linger testified it was her opinion that the children were alienated from Mother and it was not in the best interests of the children to terminate the Shared Parenting Plan. The magistrate denied the motion to terminate. Father objected to the decision, arguing in part that Dr. Milsaps-Linger's conclusion as to parental alienation was not supported by the record. In the trial court's July 8, 2013 judgment entry, the trial court sustained Father's objections to the magistrate's decision. The majority of the judgment entry centered on the trial court's disagreement with the finding of parental alienation because parental alienation was not supported by the record. Mother argues on appeal it was error for the trial court to reject the recommendations of Dr. Milsaps-Linger because she was the court's witness.

{¶38} The trial court is the ultimate fact finder and issue resolver. It is well established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell*, 79 Ohio App.3d 667, 679, 607 N.E.2d 1096 (4th Dist. 1992). The trial court did not reject the testimony of Dr. Milsaps-Linger in a vacuum, but rather considered her findings in relation to the evidence presented at the hearing. The trial court, as fact finder, did not follow Dr. Milsaps-Linger's conclusion because it found the determination of parental alienation was not supported by the evidence. We cannot say a trial court's consideration of a witness's testimony in such a manner is error.

{¶39} Mother's second Assignment of Error is overruled.

## CONCLUSION

{¶40} The judgment of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed.

By:  Delaney, J.,

Wise, P.J. and

Baldwin, J., concur.