[Cite as *Davis v. Davis*, 2016-Ohio-7205.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| ERIC J. DAVIS | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2016 AP 05 0031 |
| SHANNON D. DAVIS | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Civil appeal from the Tuscarawas County Court of Common Pleas, Case No. 2008 TC 01 0035

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: October 03, 2016

APPEARANCES:

For Plaintiff-Appellee

BRADLEY HILLYER
201 North Main Street
Box 272
Uhrichsville, OH 44683

For Defendant-Appellant

SCOTT J. MASTIN
108 ½ East High Avenue, Ste. 3
New Philadelphia, OH 44663

*Gwin, P.J.*

{¶1} Appellant appeals the April 27, 2016 judgment entry of the Tuscarawas County Common Pleas Court sustaining appellee's objections to the magistrate's decision and denying appellant's motion for change of custody.

*Facts & Procedural History*

{¶2} Appellee Eric Davis ("Father") and appellant Shannon Davis ("Mother") were married in January of 2001. The parties had two children, A.D., born April 24, 2003 and K.D., born November 20, 2007. Appellee filed a complaint for divorce on January 16, 2008. In 2009, the trial court granted custody of the two children to appellee.

{¶3} On July 1, 2015, appellant filed a motion for change of custody and motion for child interview. The magistrate conducted a recorded interview of the children on July 30, 2015. The trial court ordered the child interview recording be made a part of the official record in the case.

{¶4} The magistrate held a hearing on appellant's motion for change of custody on October 28, 2015. Appellee testified when he was granted custody of the children in 2009, he lived in Camp Lejeune, North Carolina, due to his employment with the military. Subsequently, the military transferred him to Biloxi, Mississippi, where he and the children have lived for approximately four years. Appellee is now retired from the military. He purchased a home in Mississippi and intends to remain there. Appellee stated the children are doing well in school, as they get good grades and have recently begun extracurricular sports. K.D. has behavioral problems at school, but appellee and his wife arranged for ADHD evaluation and counseling.

{¶5} Appellee testified he has never limited phone calls from the children to appellant. Appellant never asked him for the children's doctors' names and never asked him to sign a release for her to contact any doctors. Appellee punishes the children by taking away their video games. As to using military exercises as punishment, appellee stated he thought K.D. was hyper and needed to get his energy out. Prior to using these exercises, appellee tried time outs, taking stuff away, and providing incentives. Appellee used these military exercises for approximately one month.

{¶6} As to the children's reaction to returning to Mississippi after being with appellant in the summer, appellee testified the children were "bummed" on the way home, but have not said anything since returning home. Appellee stated appellant does not call the children every week although she can call them whenever she wants and they can call her whenever they want. Appellee testified the children do not get off the phone with her and ask to live with her. Appellee is concerned with appellant's lack of discipline, K.D.'s weight loss over the summer, and about appellee's continued relationship with boyfriend Greg Grove.

{¶7} On cross-examination, appellee denied calling his son fat and/or lazy. Appellee also denied yelling at his ex-wife Casey Posada ("Posada") and denied having anger issues. Appellee stated he divorced Posada because she screamed, yelled, and lost her temper with the children. He confirmed he does smoke with the children in the car, but cracks a window. Appellee also denied bad-mouthing appellant in front of the children.

{¶8} Appellee stated for a period of time, the children did modified military exercises such as wall squats, running, laying down and lifting their feet approximately

six inches off the floor, and push-ups. K.D. did throw up on one occasion after being required to run around the backyard. These were used mostly with K.D. as a result of his behavioral issues. Appellee testified A.D. tried to run away from home once in 2012. In early 2015, the Department of Human Services investigated appellee's home due to these military exercises. The complaint for abuse/neglect was found to be unsubstantiated. Appellee stopped using these punishments after someone "opened his eyes" to the possibility they could appear to be abusive.

{¶9} Appellant testified she has lived in the same home for approximately seven years in subsidized housing. She is working full-time, obtained her associate's degree, and is working towards her bachelor's degree. Appellant has two children with Greg Grove and these children get along with A.D. and K.D. very well. Appellant stated appellee does not communicate with her about the children and he did not start sending e-mails with regards to the children until after she filed her motion for custody. Appellant had to contact the school directly to get the children's school records. While Grove is not paying child support, he helps her with money when she needs it. Appellant is concerned about the punishments appellee uses with the children and his name-calling of her and the children. Appellant does not smoke and she uses time-outs for discipline. Appellant believes the change in circumstances since 2009 is how the children are treated by appellee and the fact that the children are unhappy and want to live with her.

{¶10} On cross-examination, appellant testified she does not have a child support order in place with Grove. However, if she obtained custody of A.D. and K.D., she is not sure she would have that same arrangement with appellee. Appellant's utilities are paid for by the government, as is the health insurance of her and Grove's children. Appellant

also receives food stamps and help from DJFS with child care. Appellant realizes it is possible she would lose this government support if Grove were paying child support. She did not report the money from Grove to DJFS.

{¶11} Appellant agrees A.D. and K.D. are doing well in school in Mississippi. Appellant testified she does not know who their teachers are and has never attempted to contact them. She has not called the school and does not go online to check the children's progress or view their report cards. Appellant testified K.D. takes medication for ADHD, but she does not know what it is because appellee did not tell her, although he did send the bottle of medication for the summer. Appellant has concerns about K.D. taking this medication, but she never talked to the doctor about these concerns. She does not know who the doctor is and acknowledged it would not take her long to find out.

{¶12} Appellant stated that though her phone has e-mail capabilities, she did not respond to any of appellee's e-mails about the children. On August 7, 2015, appellee e-mailed appellant forms from the school including teacher's names. On August 16, 2015, appellee e-mailed appellant A.D.'s football schedule. On August 23, 2015, appellee e-mailed appellant about school things and band. Appellant acknowledges these e-mails, but testified appellee only started e-mailing after she filed her motion for custody.

{¶13} Posada testified she married appellee in 2009 and separated from him in August of 2010. Their divorce was finalized in February of 2011. Posada stated appellee did not spend quality time with the children and she does not remember him taking the children to medical or dental appointments. According to Posada, appellee has anger issues, has a temper with the children, and he was controlling. Posada testified appellee

frequently yelled and raised his voice at her and the children.  Further, he bad-mouthed appellant in front of the children.

{¶14}  On cross-examination, Posada stated she lived together with appellee and the children for approximately seven to eight months and she has not seen appellee with the children since August of 2010.  She never observed the children in Mississippi.

{¶15}  Crystal Davis, appellee's current wife, married appellee in August of 2014.  Crystal testified the children have friends in the neighborhood and they live in a nice home in a subdivision.  She has never heard the children talk about living with appellant, but they were concerned about appellant sending them their school clothes.  Crystal stated the school system the children attend is good, the children are doing great, and she has met with the teachers.  Crystal testified she has a good relationship with the children and she and appellee take the children bowling, roller skating, out to dinner, they play games, and have movie nights.

{¶16}  Crystal testified K.D. sees a therapist for behavioral issues and ADHD.  They are trying to work out medication for his issues, but K.D. is still doing well in school.  She and appellee currently discipline the children by taking video games away.  The children usually call appellant once per week and the kids have their own cell phone that appellee pays for.  The calls usually last a half-hour to an hour and neither she nor appellee restricts calls to appellant.

{¶17}  On cross-examination, Crystal testified she and appellee did previously use military-exercise discipline, but they have changed those practices.  However, since A.D. started playing football, he does some similar exercises on his own for football training.

Crystal stated the complaint with DHS was unsubstantiated. The children have never indicated to Crystal that they want to live with appellant.

{¶18} The magistrate issued a decision on November 25, 2015. The magistrate found appellee's remarriages and move to Mississippi were changes in circumstances. The magistrate stated that, as was the situation in 2009, each parenting style has disadvantages. However, since the children felt closer to appellant and appellant made significant improvements in her life, the magistrate recommended the children be placed in the custody of appellant with appellee having long distance companionship.

{¶19} Appellee filed initial and supplemental objections to the magistrate's decision. Appellee argued the magistrate's decision was not supported by the law or the evidence and that the magistrate erred in recommending the children be placed in the custody of appellant. Appellee also objected to the magistrate's findings of fact. Appellee contended appellee did not establish a change in circumstances that had a material and adverse effect upon the children. Appellant replied to appellee's objections and argued the evidence presented supported the magistrate's recommendation.

{¶20} On April 27, 2016, the trial court issued a judgment entry sustaining appellee's objections to the magistrate's decision and denying appellant's motion for change in custody. The trial court conducted an independent analysis after reviewing the transcripts and the recording of the child interviews.

{¶21} The trial court found that during the child interview, the children expressed a desire to live with appellant, but their comments suggested one or both were coached by appellant before the interview and appellant disparaged appellee to the children. The trial court noted appellee's parenting style was regimented and stricter than appellant's

and also noted the continued concern about appellant's ongoing relationship with Grove and the lack of court-ordered child support for her other children. However, the trial court stated appellant has made significant improvements in her life. The trial court stated the parties do not communicate well regarding the children and when appellee tried to communicate via e-mail, appellant did not respond. The trial court found Posada's testimony only nominally relevant to the current issues in the motion for custody because Posada has not seen appellee in over five years.

{¶22} The trial court concluded appellee's move to Mississippi over four years ago was not a change of circumstance because there is no evidence the move harmed the children or the children had any trouble adjusting to the move. The trial court noted the children already lived in a different state from appellant when they lived in North Carolina and there was no evidence this move affected their relationship with appellant. The trial court also found appellee's remarriages were not a change in circumstance because there was no evidence these marriages affected the children. The trial court found the children's desire to live with appellant was not sufficient for a change in circumstances. Rather, the trial court placed less weight on the children's wishes because their opinions were expressed at the end of the summer prior to returning to school and because the children appeared to be coached by appellant prior to the interview. The trial court stated that, pursuant to the applicable statutes, any changes in appellant's life, as the non-residential parent, do not constitute a change in circumstances.

{¶23} The trial court further found that, even if there was a change in circumstances, it is in the best interest of the children to remain with appellee. The trial court stated the current parenting schedule complements the strengths of each parent.

The children benefit from appellee's regimented parenting style during the school year, appellee is retired and thus has time to help the children with school, and the children are doing well in Mississippi.  However, the children can also enjoy quality time with appellant and have fun with appellant during the summer and on school breaks.  The trial court denied appellant's motion for change in custody.

{¶24} Appellant appeals the April 27, 2016 judgment entry of the Tuscarawas County Court of Common Pleas and assigns the following as error:

{¶25} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THAT NO CHANGE OF CIRCUMSTANCES HAD OCCURRED.

{¶26} "II. THE TRIAL JUDGE ERRED IN FINDING THAT THE CHILDREN'S WISHES AS EXPRESSED IN THE CHILD INTERVIEW SHOULD BE GIVEN LESS WEIGHT AND FURTHER ERRED IN FINDING THAT THE CHILDREN HAD BEEN COACHED BY DEFENDANT/APPELLANT.

{¶27} "III. THE TRIAL COURT JUDGE ERRED IN RULING THAT IF THERE WAS A CHANGE OF CIRCUMSTANCE IT WAS STILL NOT IN THE CHILDREN'S BEST INTEREST TO BE PLACED WITH THEIR MOTHER."

I.

{¶28} In her first assignment of error, appellant argues the trial court erred in finding there was no change of circumstances.

{¶29} Our standard of review in assessing the disposition of child custody matters is that of abuse of discretion.  *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).  Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the

witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386.

{¶30} R.C. 3109.04(E)(1)(a) provides as follows:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and one of the following applies * * * (iii) the harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child.

{¶31} Thus, a trial court will not have to reach the best interest analysis if a change of circumstances is not found. *Noe v. Noe*, 5th Dist. Ashland No. 14 COA 026, 2015-Ohio-847. R.C. 3109.04 does not define the concept of "change in circumstances." However, Ohio courts have held the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Wyss v. Wyss*, 3 Ohio App.3d 412, 445 N.E.2d 1153 (10th Dist. 1982). A trial court "must carefully consider the nature, circumstances, and effects of each purported change, such as growth and improvement (excepting some measure of mistakes along the way) should be fostered

rather than blindly chilled or penalized in the name of stability." *Murphy v. Murphy*, 5th Dist. Tuscarawas No. 2014 AP 01 0002, 2014-Ohio-4020.

**{¶32}** Additionally the change of circumstances must be "one of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). This prevents a constant re-litigation of the issues that have already been determined by a trial court. *Id.* The change in circumstances "must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer*, 194 Ohio App.3d 240, 2011-Ohio-2610, 955 N.E.2d 453 (3rd Dist.). A change of circumstances is an event or occurrence that has a material effect on a child. *Hrabovsky v. Axley*, 5th Dist. Stark No. 2013CA00156, 2014-Ohio-1168.

**{¶33}** Appellant argues the trial court erred in directly contradicting the findings of the magistrate and that since the magistrate conducted the evidentiary hearing in this case, she was the trier of fact and deference should be given to her findings of fact and conclusions of law by the trial court and by this Court.

**{¶34}** Upon appellee's objections to the magistrate's decision, the trial court conducted an independent analysis of the facts and law based on the record and sustained appellee's objections to the magistrate's decision. Appellant argues the trial court's decision should not have been given greater weight because the trial court did not have the opportunity to hear the witnesses. We disagree. We have generally recognized a trial court enjoys broad discretion in determining whether to sustain or overrule an objection to a magistrate's decision. *Hrabovsky v. Axley*, 5th Dist. Stark No. 2013CA00156, 2014-Ohio-1168; *Ford v. Ford*, 5th Dist. Tuscarawas No. 2012 AP 03 0025, 2012-Ohio-5454. Moreover, magistrates are arms of their appointing courts, "which

remain responsible to critically review and verify the work of the magistrates they appoint."

*Quick v. Kwiatkowski*, 2nd Dist. Montgomery No. 18620, 2001 WL 871406 (Aug. 3, 2001),

citing *Normandy Place Associates v. Beyer*, 2 Ohio St.3d 102, 443 N.E.2d 161 (1982).

While the magistrate is the "initial fact finder and issue resolver," the trial court remains

the "ultimate fact finder and issue resolver." *See Dayton v. Whiting*, 110 Ohio App.3d

115, 673 N.E.2d 671 (2nd Dist. 1996). Thus, we find our essential role in determining

whether there is relevant, competent and credible evidence upon which the fact finder

could base its judgment is not altered simply because the trial court overruled the

magistrate's decision.

{¶35} Appellant contends appellee's move of the children, his additional

marriages, appellee's treatment of the children, and the children's wishes separately or

together constitute a change of circumstances.

{¶36} The general rule is that relocation, by itself, is not sufficient to be considered

a change of circumstances, but it is a factor in such a determination. *Stein v. Anderson*,

5th Dist. Tuscarawas No. 2009 AP 08 0042, 2010-Ohio-18. As aptly stated by the

Eleventh District Court of Appeals, " * * * since a child is almost always going to be harmed

to some extent by being moved, the non-custodial parents should not be able to satisfy

his or her burden simply by showing that *some* harm will result; the amount of harm must

transcend the normal and expected problems of adjustment." *Id.*, citing *Schiavone v.*

*Antonellii,* 11th Dist. Trumbull No. 92-T-4794, 1993 WL 548034 (Dec. 10, 1993). In this

case, the children moved from North Carolina to Mississippi approximately four years

prior to the hearing on the motion for custody and there is no evidence the move from

North Carolina to Mississippi harmed the children in any way or the children had any difficulty adjusting to the move.

{¶37} As to appellee's re-marriages, remarriage alone is not a change in circumstances. *DeLong v. DeLong*, 5th Dist. Fairfield No. 24-CA-86 1986 WL 12666 (Nov. 4, 1986). A remarriage may be considered an unforeseen change of circumstance if it creates hostility by the residential parent and new spouse against the non-residential parent. *Piwinski v. Piwinski*, 8th Dist. Cuyahoga No. 73956, 1999 WL 148483 (March 18, 1999). In this case, there is no testimony or evidence in the record that appellee's new marriage to Crystal Davis created any hostility towards appellant. Further, there is testimony that appellant and Posada get along and still talk occasionally.

{¶38} A child's desire to live with a particular parent, without more, does not constitute a change in circumstance. *Markley v. Markley*, 9th Dist. Wayne No. 06CA0043, 2007-Ohio-886. The determination of whether the child's age, coupled with the desire to live with a different parent, constitutes a change in circumstances is made by the trial court on a case-by-case basis. *Pryor v. Hooks*, 9th Dist. Summit No. 25294, 2010-Ohio-6130. Upon this Court's review of the interview with the children, we find there is competent and credible evidence upon which the trial court could base its judgment that the children were coached by appellant. A trial court acts within its discretion in giving little weight to statements attributed to a child where there is evidence the child has been coached by one parent regarding his feelings for the other parent. *Forrester v. Forrester*, 2nd Dist. Greene No. 2004 CA 81, 2005-Ohio-5230. Thus, we find the trial court did not abuse its discretion in giving less weight to the child interviews and finding the children's desire to live with appellant did not constitute a change in circumstances.

**{¶39}** Appellant finally argues the way the children were treated by appellee constitutes a change in circumstances. Appellant relies heavily on the testimony regarding the modified military exercises as punishment and the testimony by Posada.

**{¶40}** Appellee testified he and Crystal Davis used modified military exercises as punishment for approximately one month in January of 2015. They mostly used these exercises with K.D. as a result of his behavioral issues, after they tried time outs and incentives. These included: wall squats, running, laying down and lifting their feet approximately six inches off the floor, and push-ups.

**{¶41}** We find there is relevant, competent, and credible evidence upon which the trial court could base its judgment that appellee's treatment of the children is not a change in circumstances. Appellee stated he stopped using these exercises after approximately one month after someone opened his eyes to the possibility they could appear to be abusive. A complaint to the Harrison County Department of Human Services for abuse and neglect was unsubstantiated. Appellee testified now K.D. is seeing a therapist and is on medication for ADHD and behavioral issues. Both appellee and Crystal testified they now take away video games as punishment. Appellee, appellant, and Crystal testified the children are doing very well in school. As was the case in 2009, the evidence demonstrated appellee's parenting style is more regimented than appellant's and each parenting style has advantages and disadvantages. Further, though appellant has made some improvements in her life since 2009, R.C. 3109.04(E)(1)(a) provides the non-residential parent's change in circumstance is relevant only in the context of a shared-parenting decree, which is not in place in this case. See *Ashbridge v. Berry*, 2nd Dist. Greene No. 2009-CA-83, 2010-Ohio-2914.

{¶42} Posada testified appellee does not spend quality time with the children, had anger issues and a temper with her and the children, he yelled and raised his voice at them, and bad-mouthed appellant in front of the children. The trial court found her testimony only nominally relevant to the current issues before the court because she has not seen appellee in over five years. Posada testified she, appellee, and the children lived together for approximately seven or eight months, she has not seen appellee since August of 2010, and she never saw the children in Mississippi. Appellee testified he does not call the children names, he does not have anger issues, and does not bad-mouth appellant in front of the children. Further, that he divorced Posada because she screamed and yelled at the children. Crystal Davis testified appellee and the children have a good relationship. It is well established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). We have reviewed the record and find no abuse of discretion for the trial court to determine Posada's testimony was nominally relevant and place more weight upon the testimony of appellee and Crystal Davis.

{¶43} In this case, the trial court went through each prong of appellant's motion as to change in circumstances in accordance with R.C. 3109.04(E)(1)(a) and with the directive that it "must carefully consider the nature, circumstances, and effects of each purported change." *Murphy v. Murphy*, 5th Dist. Tuscarawas No. 2014 AP 01 002, 2014-Ohio-4020. The trial court went through each circumstance cited by appellant and determined neither one individual nor the combined factors is a sufficient change in circumstances to warrant a modification. As detailed above and upon our review of the record, we find there is relevant, competent, and credible evidence to support the trial

court's determination. We find no abuse of discretion in the trial court's determination that nothing rising to the level of a material and adverse occurrence or occurrences impacting the children was demonstrated for purposes of finding a change in circumstances under R.C. 3109.04(E)(1)(a).

{¶44} Appellant's first assignment of error is overruled.

II.

{¶45} In her second assignment of error, appellant contends the trial court erred in finding the children's wishes in the child interview should be given less weight and finding the children had been coached by appellant.

{¶46} Pursuant to R.C. 3109.04(F)(1), one factor in determining the best interest of the child is the wishes and concerns of the child as expressed to the court. We first note that since we overruled appellant's first assignment of error, it is not necessary to reach the best interest analysis. *Noe v. Noe*, 5th Dist. Ashland No. 14 COA 026, 2015-Ohio-847. However, if we consider appellant's assignment of error, we find the trial court did not abuse its discretion with regards to the child interview.

{¶47} Appellant again argues since the magistrate actually conducted the child interview, more weight should be given to her determination than the trial court's. However, as noted above, the trial court has broad discretion to sustain or overrule an objection to a magistrate's decision and while the magistrate is the "initial fact finder and issue resolver," the trial court remains the "'ultimate fact finder and issue resolver." *Hrabovsky v. Axley*, 5th Dist. Stark No. 2013CA00156, 2014-Ohio-1168.

{¶48} Further, upon this Court's review of the interview with the children, we find there is competent and credible evidence upon which the trial court could base its

judgment that the children were coached by appellant. A trial court acts within its discretion in giving little weight to statements attributed to a child where there is evidence the child has been coached by one parent regarding his feelings for the other parent. *Forrester v. Forrester*, 2nd Dist. Greene No. 2004 CA 81, 2005-Ohio-5230. Thus, we find the trial court did not abuse its discretion in giving less weight to the child interviews.

{¶49} Appellant's second assignment of error is overruled.

III.

{¶50} In her third assignment of error, appellant argues the trial court erred in finding that even if there was a change in circumstances, it is not in the best interest of the children to be placed with appellant.

{¶51} R.C. 3109.04(B)(1) provides, "when making the allocation of the parental rights and responsibilities for the care of the children under this section * * * in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children."

{¶52} R.C. 3109.04(F)(1) provides that, in making this determination of best interest, a court is to consider all relevant factors, including, but not limited to: (a) the wishes of the child's parents; (b) the child's wishes and concerns; (c) the child's interactions and interrelationship with her parents; (d) the child's adjustment to her home and community; (e) the mental and physical health of all persons involved in the situation; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make child support payments * * *; and (j) whether either parent has established a residence, or is planning on establishing a residence, outside this state.

{¶53} In her brief, appellant essentially argues the factual and legal determinations with regard to best interest made by the magistrate are the correct ones, rather than those by the trial court. We again note the trial court has broad discretion to sustain or overrule an objection to a magistrate's decision and the trial court is the ultimate fact finder and issue resolver. *Hrabovsky v. Axley*, 5th Dist. Stark No. 2013CA00156, 2014-Ohio-1168.

{¶54} Upon review of the record, we find there is competent and credible evidence to support the trial court's decision that the children remaining in the custody of appellee with the long distance visitation schedule for appellant is in A.D. and K.D.'s best interest.

{¶55} Appellant and appellee both testified the children are doing very well in school and recently began extracurricular activities. The children are in good physical health and appellee recently took K.D. for ADHD evaluation and counseling. The children have friends in Mississippi and get along with appellant's other children when they visit. While the children expressed a desire to live with appellant, the interview was conducted after a summer with appellant and the comments made by the children suggest they were coached by appellant and appellant disparaged appellee to the children.

{¶56} While appellant briefly used military-type exercises as punishment, he is no longer employing these methods and the complaint for abuse and neglect was unsubstantiated. Though appellant has made improvements such as gaining full-time employment and obtaining her degree, she has little involvement with the children's schooling or their medical treatment. Further, appellant's ongoing relationship with Grove and the lack of court-ordered child support for her other children remains a concern. As detailed above, Posada's testimony was contradicted by the testimony of appellee and

Crystal Davis and trial court is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). There is competent and credible evidence to support the trial court's determination that each parent has different parenting styles and the current parenting schedule is in the best interest of the children as it complements the parenting strengths of each parent. The children benefit from appellee's regimented parenting style during the school year and are doing well in their school in Mississippi, but are also able to spend time and have fun with appellant during the summer and other breaks.

{¶57} Appellant's third assignment of error is overruled.

{¶58} Based on the foregoing, appellant's assignments of error are overruled. The judgment entry of the Tuscarawas County Court of Common Pleas is affirmed.

By Gwin, P.J., and

Baldwin, J., concur;

Hoffman, J., concurs

separately

*Hoffman, J., concurring*

{¶59} I respectfully disagree with the majority's decision to overrule Appellant's first assignment of error. I agree none of the changes standing alone necessarily constitute a change of circumstances.[1] However, when taken together, I find the changes sufficient to warrant proceeding to the best interest analysis.

{¶60} Because I concur in the majority's analysis and disposition of Appellant's second and third assignments of error, I concur in the decision to affirm the trial court.

---

[1] That is not to say it would necessarily be an abuse of discretion to find any one of the changes, standing alone, sufficient to constitute a change in circumstances.